# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

ESTHER M. ZEPEDA,            )
                                     )
         Plaintiff,          )
                                     )
        v.                 )       No. 11 C 1604
                                     )
COOK COUNTY, ILLINOIS,   )       Chief Judge Ruben Castillo
and CLERK OF THE CIRCUIT  )
COURT OF COOK COUNTY,   )
ILLINOIS,                     )
                                     )
        Defendants.     )

## MEMORANDUM OPINION AND ORDER

Esther M. Zepeda ("Plaintiff") brings this action under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*, and the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et. seq.*, against Cook County and the Clerk of the Circuit Court of Cook County, Illinois (collectively, "Defendants"), alleging national origin discrimination, age discrimination, and retaliation. (R. 19, Am. Compl.) Presently before the Court is Defendants' motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. For the reasons stated below, the Court grants Defendants' motion.

## RELEVANT FACTS[1]

Plaintiff, a fifty-three-year-old Latin American female of Salvadorian descent, has been employed by the Clerk of the Circuit Court of Cook County (the "Clerk" or "Clerk's Office")

---

[1] The Court takes the undisputed facts from the parties' Local Rule 56.1 statements of material facts. (R. 71, Defs.' Local Rule 56.1(a)(3) Statement of Material Facts and Supporting Exhibits ("Defs.' Rule 56.1 Facts"); R. 85, Pl.'s Resp. to Defs.' Rule 56.1 Facts ("Pl.'s Rule 56.1 Resp."); R. 86, Pl.'s Local Rule 56.1(b)(3)(C) Statement of Undisputed Facts ("Pl.'s Rule 56.1 Facts"); R. 90, Defs.' Reply to Pl.'s Rule 56.1 Facts ("Defs.' Rule 56.1 Resp.").)

since 2002.[2]  (Pl.'s Rule 56.1 Resp. ¶ 1.)  Plaintiff began her employment as a grade 9 clerk in

the Traffic Division of the Second Municipal District located in Skokie, Illinois, and was

transferred in 2004 to serve in the position of Cashier 2 in the Criminal Division, where she

currently remains.  (*Id.*  ¶¶ 5, 7.)  In 2007, Plaintiff was promoted to a grade 10 position.  (*Id.* ¶

8.)

Plaintiff has had a difficult relationship with some of her supervisors at the Clerk's

Office.  (*Id.* ¶¶ 12-13, 17-21.)  Vicki Vasquez, a Latino-American female, supervised Plaintiff

when she worked in the Traffic Division and for some of the time she worked in the Criminal

Division.  (*Id.* ¶ 6; R. 71-2, Ex. B, Pl.'s Dep. at 38:18-39:16.)  Plaintiff felt uncomfortable

working with Vasquez; she found Vasquez's personal questions to be disrespectful and her

questions about transactions Plaintiff performed to be accusatory.  (Pl.'s Rule 56.1 Resp. ¶ 12.)

Plaintiff alleges that Vasquez once said to her: "why should I respect you when you are older

than me, when you are old."  (*Id.* ¶ 13.)  On another occasion, Vasquez told Plaintiff that

Plaintiff was Spanish and she was American.  (*Id.* ¶ 53.)  Plaintiff also felt uncomfortable

working with John Chatz, another of her supervisors.  (*Id.* ¶ 17.)  Plaintiff felt disrespected by the

tone of voice Chatz used and the facial expressions he exhibited when he corrected her mistakes.

(*Id.* ¶ 17.)  Plaintiff understood that Chatz, as her supervisor, was entitled to criticize her, but she

felt discriminated against when he accused her of things she did not do.  (*Id.* ¶ 18.)

---

[2]  Defendants state in their Local Rule 56.1 Statement of Facts, filed on June 28, 2013, that
Plaintiff is fifty-nine years old, and Plaintiff admits as much.  (Pl.'s Rule 56.1 Resp. ¶ 1.)
Plaintiff states in her amended complaint, filed on August 15, 2011, that she is fifty-one years
old.  (R. 19, Am. Compl. ¶ 82.)  Additionally, in her response to Defendants' motion for
summary judgment, Plaintiff states that she was fifty-one years old at the time of filing her
complaint.  (R. 84, Pl.'s Mem. at 1.)  The Court will therefore assume that Plaintiff was fifty-one
years old on August 15, 2011, and that Defendants incorrectly recorded her age in their Local
Rule 56.1 Statement.

Denise Shine, a forty-four-year-old Caucasian female of German-Irish descent, is one of Plaintiff's current supervisors. (*Id.* ¶¶ 9-11.) Shine became the Criminal Manager for the Second Municipal District in 2009, and she supervises thirty courtroom clerks and approximately ten employees of the Clerk's Office who work in the Second Municipal District. (*Id.* ¶ 11.) Shine testified in her deposition that Plaintiff is "a very good cashier. She's customer oriented. She's great with customers." (Defs.' Rule 56.1 Resp. ¶ 1.) Shine clarified that she was referring to "external customers," and that Plaintiff does do not well with "internal customers" such as co-workers and managers. (*Id.*) Shine stated that Plaintiff is difficult to work with because she does not take direction well; she is easily flustered and frustrated. (*Id.*) Shine added that Plaintiff follows directions, but "there's chaos and there's dishevelness [sic] and there's argument at any direction that she is given." (Pl.'s Rule 56.1 Resp. ¶ 20; R. 71-3, Ex. C, Shine Dep. at 10:16-19.) Plaintiff's reaction towards management has been addressed on numerous occasions. (Pl.'s Rule 56.1 Resp. ¶ 20.) Shine stated that she could have disciplined Plaintiff on a weekly basis due to the frequency of Plaintiff's misconduct, but chose not to due to Plaintiff's difficult demeanor. (*Id.* ¶ 21.) Plaintiff disagreed with the manner in which her supervisors handled incidents where she was alleged to have made a mistake or conducted herself inappropriately. (*Id.* ¶ 48.) Plaintiff consistently disagreed with her supervisors' version of incidents that occurred and thought that other co-workers or third parties should have been questioned regarding their version of a particular incident. (*Id.* ¶ 49.) Plaintiff has been disciplined on several occasions and has received a one-day suspension for violating sections of the Workplace Violence Policy, General Rules and Regulations, and Code of Ethics.[3] (*Id.* ¶¶ 47-51.)

---

[3] Defendants have provided an Affidavit from Robbin Perkins, Chief Human Resource Officer for the Clerk, which details Plaintiff's disciplinary history, along with copies of Plaintiff's disciplinary letters. (R. 71-5, Ex. E, Perkins Aff. ¶ 12; R. 71-9, Ex. E, Tab 4, Disciplinary

A collective bargaining agreement ("CBA") entered into between the Clerk of the Circuit Court and the AFL-CIO Union establishes the bidding process for filling vacant positions within the Clerk's Office. (*Id.* ¶ 25; R. 71-6, Ex. E, Tab 1, Collective Bargaining Agreement.) Pursuant to the CBA, all promotions to a primary, secondary, tertiary, or lateral vacancy are determined by assessing the bidders' skills and abilities as determined by evaluation scores, job-related training and education, discipline history, and time actually performing the job, along with demonstrated ability. (Pl.'s Rule 56.1 Resp. ¶ 26.) Plaintiff bid on positions that she assumed she was qualified for based on her seniority, knowledge, and skills. (*Id.* ¶ 22.) Sometime in 2008 or 2009, Plaintiff made an inquiry as to the reason she had not been promoted to vacant positions. (*Id.* ¶ 24.) She received in response an inner-office memorandum from Chief Deputy Diane Newman that explained the primary, secondary, tertiary, and lateral bid process. (*Id.*) Plaintiff does not know how many employees bid for open positions or what specific criteria were used to award the bids, but she nevertheless took issue with the awarding of vacant positions to Luz Santiago, Izza Garcia, and Danuta Bogdan because she believed they had less seniority than she did. (*Id.* ¶¶ 23, 27.) Plaintiff claims she had more experience than Santiago, Garcia, and Bogdan because she had worked in both the Traffic Division and the Criminal Division. (*Id.* ¶ 28.) Plaintiff has no knowledge, however, of these individuals' hire dates, prior work experience within the Clerk's Office, disciplinary history, or individual evaluations. (*Id.* ¶ 27.) Santiago is forty-four years old and believed by Plaintiff to be Puerto Rican; Garcia is forty-

Letters.) Plaintiff received a one-day unpaid suspension on December 10, 2008 for violating sections of the Workplace Violence Policy, General Rules and Regulations, and Code of Ethics. (R. 71-9, Ex. E, Tab 4, Disciplinary Letters.) Plaintiff also received written warnings on June 18, 2012 for verbal abuse of a manager, on September 22, 2011 for violations of the Clerk's Office General Rules and Regulations, Section 4.1.12 and the Code of Ethics, Sections 1A and 1B, and on March 4, 2009 and August 4, 2008 for insubordination, including the failure to follow the instructions of a supervisor. (*Id.*)

two years old and believed by Plaintiff to be Mexican; and Bogdan is sixty-five years old and believed by Plaintiff to be Polish. (*Id.* ¶¶ 27-31.)

Employees are cross-trained when there is staff available to train the individual and cover the needs of the individual's office while he or she is being trained. (*Id.* ¶ 37.) An employee does not need to complete cross-training to be awarded a vacant position. (*Id.* ¶ 34.) Employees seeking cross-training submit a written request to Amy Przybylo, the Chief Deputy Clerk of the Second Municipal District. (*Id.* ¶¶ 16, 36.) Przybylo is a sixty-two-year-old Caucasian female. (*Id.* ¶ 15.) Przybylo alleges that written requests for cross-training are honored on a first-come, first-serve basis according to a logbook she maintains. (*Id.* at ¶ 36.) Plaintiff denies that her written requests were honored on a first-come, first-serve basis. (*Id.*) Plaintiff alleges that she had to request cross-training on multiple occasions to receive such training, although she has not provided any evidence of her requests. (Defs.' Rule 56.1 Resp. ¶ 5.) Plaintiff was cross-trained on two separate occasions in 2009 and 2011. (Pl.'s Rule 56.1 Resp. ¶ 35.) In 2009, Plaintiff was trained in a Traffic Misdemeanor Courtroom; in 2011, Plaintiff was trained in a Felony Courtroom. (*Id.*) Plaintiff's Traffic Misdemeanor Courtroom training began in October 2009 and then was interrupted near the end of 2009 after two individuals were promoted to courtroom clerk positions. (*Id.* ¶ 39; R. 19, Am. Compl. ¶¶ 11-12.) Darshna Patel, a fifty-five-year-old Indian female, was one of the individuals promoted to that position. (Pl.'s Rule 56.1 Resp. ¶¶ 32, 39; R. 84, Pl.'s Mem. at 2.) Because Plaintiff had not been awarded a position and was merely cross-training, her training was placed on hold to allow Rose Schwartz, the Court Clerk Trainer, to train individuals who were promoted. (Pl.'s Rule 56.1 Resp. ¶¶ 39, 42.) Plaintiff's cross-training resumed in June 2011 and re-started from the beginning due to the amount of time that had lapsed as a result of the interruption. (*Id.* ¶ 40; R. 19, Am. Compl. ¶ 14.) Schwartz

maintained cross-training status reports pertaining to Plaintiff's cross-training progress, and Przybylo reviewed the daily reports. (Pl.'s Rule 56.1 Resp. ¶¶ 42-43.) During the course of Plaintiff's cross-training, Shine cross-trained Plaintiff on one occasion and observed her to lack the basic knowledge required of a courtroom clerk. (*Id.* ¶ 45.) Shine discussed Plaintiff's cross-training with Schwartz, addressing her concerns regarding Plaintiff's inability to retain information and difficulties listening and multi-tasking. (*Id.* ¶ 44.) Plaintiff alleges that she was rebuked by Schwartz in late 2009 for speaking Spanish with Spanish-speaking persons attending court proceedings during her courtroom clerk training session. (Defs.' Rule 56.1 Resp. ¶ 2.) Since Shine's assignment to Criminal Manager, Plaintiff has been the only employee to receive cross-training. (Pl.'s Rule 56.1 Resp. ¶ 46.)

Plaintiff alleges a difference between the manner in which she is treated and that of other people; Plaintiff believes she is treated worse than others. (*Id.* ¶ 52.) Plaintiff also believes that she was retaliated against when accusations were made regarding her work performance. (*Id.* ¶ 54.) Plaintiff filed a charge of discrimination with the Illinois Department of Human Rights ("IDHR") and the Equal Employment Opportunity Commission ("EEOC") on July 24, 2009 alleging national origin discrimination, age discrimination, and retaliation; she attached a copy of this charge as an exhibit to her complaint. (R. 19-2, Ex. 2, IDHR & EEOC Charge at 1.) The EEOC issued Plaintiff a right-to-sue letter on December 7, 2010. (R. 19-1, Ex. 1, Right-To-Sue Letter.) Shine had no knowledge that Plaintiff had filed a lawsuit until the fact-finding conference was held by the Illinois Department of Human Rights. (Pl.'s Rule 56.1 Resp. ¶ 57.)

Plaintiff remains employed by the Clerk's Office as a Cashier 2, and her responsibilities and duties have remained the same since filing this suit. (*Id.* ¶ 58.)

**PROCEDURAL HISTORY**

Plaintiff initiated this action on March 7, 2011.  (R. 1, Compl.)  On July 11, 2011, Defendants filed a motion to dismiss Plaintiff's complaint.  (R. 16, Defs.' Mot. Dismiss.)  On July 14, 2011, the Court granted Defendants' motion to dismiss without prejudice and gave Plaintiff until August 15, 2011 to file an amended complaint.  (R. 18, Min. Entry.)  Plaintiff filed her three-count amended complaint on August 15, 2011.  (R. 19, Am. Compl.)  In Counts I and II, Plaintiff alleges race discrimination and retaliation in violation of Title VII.  (*Id.* ¶¶ 1-55.)  In Count III, Plaintiff alleges age discrimination in violation of the ADEA.  (*Id.* ¶¶ 56-85.)

On August 22, 2011, Defendants filed a second motion to dismiss, contending that Plaintiff's claims were time-barred.  (R. 21, Defs.' Second Mot. Dismiss.)  Although Plaintiff had initially filed suit within 90 days of receiving her right-to-sue letter, as required by Title VII and the ADEA, Defendants argued that the Court's dismissal of her claims without prejudice effectively "wiped out" the tolling effect of her filing, and her amended complaint was thus time-barred.  (*Id.*)  Defendants also argued that Plaintiff's amended complaint should be dismissed for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).  (*Id.* at 2-3.)  On January 17, 2012, the Court concluded that Plaintiff's claims were time-barred and granted Defendants' motion to dismiss.  (R. 31, Order.)

Plaintiff filed a motion to alter or amend the Court's January 17, 2012 Order pursuant to Federal Rule of Civil Procedure 59(e) on January 28, 2012, (R. 33, Pl.'s Rule 59(e) Mot.), and amended the motion on January 30, 2012.  (R. 36, Pl.'s Am. Rule 59(e) Mot.)  On September 11, 2012, the Court granted Plaintiff's motion to alter or amend its January 17, 2012 Order.  (R. 47, Order.)  The Court concluded that although its original ruling regarding the timeliness of Plaintiff's claims had not been in error, the doctrine of "unique circumstances" applied in this

7

case.  (*Id.* at 6-9.)  The Court thus reconsidered its ruling on Defendants' motion to dismiss and declined to dismiss Plaintiff's claims as time-barred.  (*Id.*)  The Court also declined to dismiss Plaintiff's claims of national origin discrimination, age discrimination, and retaliation for failure to state a claim under Rule 12(b)(6).  (*Id.* at 9-16.)

Defendants moved for summary judgment on June 28, 2013.  (R. 70, Defs.' Mot. Summ. J.)  Defendants argue that they are entitled to judgment as a matter of law because Plaintiff cannot establish: (1) her national origin discrimination claim using either the direct or indirect methods of proof; (2) her retaliation claim, because she cannot prove that she suffered an adverse employment action by the Clerk's Office; and (3) her ADEA claim, because she has not identified a "similarly situated" employee or established  "but for" causation.  (R. 72, Defs.' Mem. at 3-12.)  In response to Defendants' motion, Plaintiff contends that Defendant is not entitled to summary judgment because: (1) Plaintiff has proved through both the direct and indirect methods that Defendant discriminated against her based on her national origin; (2) Plaintiff has proved that she was qualified for a promotion and suffered an adverse employment action by not receiving one; and (3) Plaintiff has proved that younger co-workers who were directly comparable to her were promoted instead of her.  (R. 84, Pl.'s Mem. at 3-8.)  Thus, Plaintiff contends that there are genuine issues of material fact in dispute and that judgment as a matter of law cannot be entered in Defendants' favor.

## LEGAL STANDARD

Summary judgment is appropriate when the record shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.  Fed. R. Civ. P. 56(a).  A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby,*

*Inc.*, 477 U.S. 242, 248 (1986). In determining whether a genuine issue of material fact exists, the Court must view the evidence and draw all reasonable inferences in favor of the party opposing the motion. *Id.* at 255; *Omnicare, Inc. v. UnitedHealth Grp., Inc.*, 629 F.3d 697, 704 (7th Cir. 2011). The moving party has the initial burden of demonstrating that it is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Wheeler v. Lawson*, 539 F.3d 629, 634 (7th Cir. 2008). The moving party "can prevail just by showing that the other party has no evidence on an issue on which that party has the burden of proof." *Brazinski v. Amoco Petroleum Additives Co.*, 6 F.3d 1176, 1183 (7th Cir. 1993).

Once the moving party has met this burden, the nonmoving party must "come forward with specific facts demonstrating that there is a genuine issue for trial." *Wheeler*, 539 F.3d at 634. "The existence of a mere scintilla of evidence, however, is insufficient to fulfill this requirement. The nonmoving party must show that there is evidence upon which a jury reasonably could find for the plaintiff." *Id.* The nonmoving party may not rely on mere conclusions or allegations to create a genuinely disputed issue of material fact. *Balderston v. Fairbanks Morse Engine Div. of Coltec Indus.*, 328 F.3d 309, 320 (7th Cir. 2003). Instead, the nonmoving party "must make a showing sufficient to establish any essential element of her cause of action for which she will bear the burden of persuasion at trial." *Smith ex rel. Smith v. Severn*, 129 F.3d 419, 427 (7th Cir. 1997); *see also Celotex Corp.*, 477 U.S. at 322-23. Weighing evidence and making credibility decisions are jury functions, and it is not appropriate for a judge to assume those functions when ruling on a motion for summary judgment. *Anderson*, 477 U.S. at 255. Accordingly, the Court "appl[ies] the summary judgment standard with special scrutiny to employment discrimination cases, which often turn on issues of intent and credibility." *Krchnavy v. Limagrain Genetics Corp.*, 294 F.3d 871, 875 (7th Cir. 2002).

**ANALYSIS**

## I.    Plaintiff's National Origin Discrimination Claim (Count I)

In Count I, Plaintiff alleges that she was discriminated against based on her Latin American national origin in violation of Title VII when she was denied cross-training and promotion opportunities and was subjected to verbal abuse and harassment. (R. 19, Am. Compl. ¶¶ 22-23.) Title VII makes it unlawful to discriminate against an employee because of her race or national origin. 42 U.S.C. § 2000e-2(a)(1) ("It shall be an unlawful employment practice for an employer to . . . discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race . . . or national origin."). A plaintiff may prove discrimination under Title VII either directly or indirectly, through the burden-shifting approach first established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Brewer v. Bd. of Trs. of Univ. of Ill.*, 479 F.3d 908, 915 (7th Cir. 2007). Plaintiff contends that she meets the requirements of both methods of proof.

### A.    Whether Plaintiff has proved national origin discrimination through the direct method

To prove discrimination through the direct method "essentially requires an admission by the decision-maker that his actions were based on the prohibited animus." *Jordan v. City of Gary, Ind.*, 396 F.3d 825, 832 (7th Cir. 2005) (quoting *Radue v. Kimberly-Clark Corp.*, 219 F.3d 612, 616 (7th Cir. 2000)). Such admissions are rare, however, and a plaintiff may also "prevail under the direct method of proof by constructing a 'convincing mosaic' of circumstantial evidence that 'allows a jury to infer intentional discrimination by the decision-maker.'" *Rhodes v. Ill. Dep't of Transp.*, 359 F.3d 498, 504 (7th Cir. 2004) (quoting *Troupe v. May Dep't Stores Co.*, 20 F.3d 734, 737 (7th Cir. 1994)). Nonetheless, under the direct method, circumstantial

evidence "must point directly to a discriminatory reason for the employer's action." *Id.* (quoting *Adams v. Wal-Mart Stores, Inc.*, 324 F.3d 935, 939 (7th Cir. 2003)).

Plaintiff contends that she has presented a mosaic of circumstantial evidence from which a fact-finder could infer intentional discrimination based on her national origin. (R. 84, Pl.'s Mem. at 4.) Specifically, she points to the following circumstantial evidence: (1) Vasquez told Plaintiff she was Spanish and that Vasquez herself was American; (2) Schwartz rebuked Plaintiff in late 2009 for speaking Spanish with Spanish-speaking persons attending court proceedings during her training session; and (3) Chatz rebuked Plaintiff at some time in 2006 or 2007 for speaking Spanish to Spanish-speaking persons seeking the services of the Clerk's Office. (*Id.*) Plaintiff argues that these three events, taken together with the hostility displayed by her supervisors, form a convincing mosaic of circumstantial evidence. (R. 84, Pl.'s Mem. at 4.) Plaintiff has provided no specific evidence of the "hostility" she claims to have experienced, however, and she admits that the incident involving Chatz occurred before the time period in question in this case.[4] (*Id.*) Hence, Plaintiff has provided only two pieces of circumstantial evidence to construct her "convincing mosaic," and neither piece sufficiently establishes a discriminatory reason for Defendants' failure to promote her. *See Rhodes*, 359 F.3d at 504. No reasonable jury could conclude from the evidence provided that Plaintiff's supervisors intentionally discriminated against her based on her national origin. *See Dass v. Chi. Bd. of Educ.*, 657 F.3d 1060, 1073 (7th Cir. 2012) (finding the employer's alleged discriminatory

---

[4] Plaintiff filed her EEOC charge on July 24, 2009. "In Illinois, a complainant must file a charge with the EEOC within 300 days of the alleged discriminatory act and failure to do so renders the charge untimely." *Filipovic v. K & R Exp. Systems, Inc.*, 176 F.3d 390, 396 (7th Cir. 1999). Thus, any alleged discriminatory acts that occurred before September 27, 2008, i.e. 300 days prior to the date of her EEOC filing, are time-barred. Because the alleged incident involving Chatz occurred sometime in 2006 or 2007, it is time-barred and the court will not consider it as evidence of discrimination.

comment "not contemporaneous to or casually related to" the plaintiff's discharge and that "no rational juror could find that the nonrenewal was because of [plaintiff's] national origin"); *Davis v. Time Warner Cable of Se. Wis., L.P.*, 651 F.3d 664, 672-73 (7th Cir. 2011) (finding that occasional incidents that demonstrated that the employer was "boorish and tactless" were insufficient to establish that the employer terminated the plaintiff because of his race). Thus, Plaintiff has failed to establish her national origin discrimination claim through the direct method of proof.

**B.  Whether Plaintiff has proved national origin discrimination through the indirect method**

A plaintiff that has failed to establish discriminatory intent under the direct method may nonetheless prevail under the indirect, burden-shifting framework articulated in *McDonnell Douglas*. To succeed under the indirect method of proof, a plaintiff must first establish a *prima facie* case of national origin discrimination. *McDonnell Douglas*, 411 U.S. at 802. To establish a *prima facie* case of national origin discrimination in a failure to promote context, a plaintiff must demonstrate that: "(1) she is a member of a protected group; (2) she was qualified for the position sought; (3) she was rejected for the position; and (4) the employee promoted was not a member of the protected group and was not better qualified than the plaintiff."[5] *Johnson v.*

---

[5] This test is specific to establishing a *prima facie* case in a failure to promote context. The general test is the following: a plaintiff must demonstrate that (1) she is a member of a protected class; (2) she was meeting the defendants' legitimate performance expectations; (3) she suffered an adverse employment action; and (4) the defendants treated similarly situated employees outside of the protected class more favorably. *Fane v. Locke Reynolds, LLP*, 480 F.3d 534, 538 (7th Cir. 2007). In her complaint, Plaintiff alleges that she was discriminated against by being denied promotions and cross-training opportunities and by suffering verbal abuse and harassment. (R. 19, Am. Compl. ¶ 22.) Plaintiff's response to Defendants' motion for summary judgment, however, only addresses her denial of promotion opportunities and does not re-assert her denial of cross-training opportunities and verbal abuse and harassment allegations. (R. 84, Pl.'s Mem. at 3-6.) The Court will therefore consider only the alleged denials of Plaintiff's bids for promotions in analyzing her national origin discrimination claim. *See Palmer v. Marion*

*Nordstrom, Inc.*, 260 F.3d 727, 732 (7th Cir. 2001). Under the *McDonnell Douglas* framework, the plaintiff's establishment of a *prima facie* case creates a rebuttable presumption of employment discrimination, and the burden of production shifts to the employer "to articulate some legitimate, nondiscriminatory reason" for its actions. *Hong v. Children's Mem'l Hosp.*, 993 F.2d 1257, 1261 (7th Cir. 1993) (quoting *McDonnell Douglas*, 411 U.S. at 802). If the employer satisfies that burden, the plaintiff must show that the articulated reasons were pretextual. *Id.*

Defendants first argue that Plaintiff has failed to make out a *prima facie* case of national origin discrimination because she has not established that she possessed the requisite qualifications for the promotion to Courtroom Clerk I. (R. 72, Defs.' Mem. at 5.) Plaintiff relies on Shine's testimony that Plaintiff is a "very good cashier" and "great with customers" to prove that she was qualified for the position. (R. 84, Pl.'s Mem. at 5-6.) Plaintiff's skills as a cashier, however, do not necessarily indicate that Plaintiff is qualified for the Courtroom Clerk I position. Other than Shine's testimony and Plaintiff's self-evaluation of her work, Plaintiff has provided no evidence that she has the necessary skills to satisfactorily perform as a courtroom clerk. Defendants, on the other hand, have provided evidence that undermine Plaintiff's alleged qualifications. Defendants' evidence demonstrates Plaintiff's history of disciplinary issues, which includes a number of verbal and written warnings and a one-day suspension. (R. 71-5, Ex. E, Perkins Aff. ¶ 12; R. 71-9, Ex. E, Tab 4, Pl.'s Disciplinary Docs.) In addition, Defendants

_____

*Cnty.*, 327 F.3d 588, 597-98 (7th Cir. 2003) (deeming the plaintiff's negligence claim abandoned because he failed to delineate it in his brief in opposition to summary judgment); *Laborers' Int'l Union v. Caruso*, 197 F.3d 1195, 1197 (7th Cir. 1999) (stating that arguments not presented to the district court in response to summary judgment motions are waived); *Oak Brook Hotel Co. v. Teachers Ins. & Annuity Ass'n of Am.*, 846 F. Supp. 634, 641 (N.D. Ill. 1994) (finding the plaintiff's failure to defend a particular claim in response to the defendant's motion for summary judgment constituted abandonment of the claim).

have provided evaluations of Plaintiff by her supervisors, which indicate that she is "incapable of following directions, unable to handle difficult situations, deficient in multi-tasking and uncooperative with management." (R. 72, Defs.' Mem. at 5; R. 71-7, Ex. E, Tab 2, Pl.'s Bid Docs; R. 71-12, Ex. G, Pl.'s Eval.) Plaintiff's cross-training status reports also document her inability to retain information covered during her training. (R. 71-10, Ex. E, Tab 5, Pl.'s Cross-Training Reports.) Finally, the portion of Shine's testimony that Plaintiff relies on is incomplete; Shine also testified that Plaintiff was difficult to work with and argued when she was given directions. (R. 89, Defs.' Reply at 4; R. 71, Ex. C, Shine Dep. at 10:16-19.) Plaintiff has not met her burden of showing that she was qualified for a courtroom clerk position, and she has therefore failed to establish the second element of her *prima facie* case.

Defendants also argue that Plaintiff has failed to establish the fourth element of her *prima facie* case—she has failed to show that a member of the non-protected group who was not better qualified was promoted instead. (R. 72, Defs.' Mem. at 7.) Defendants note that two of the individuals Plaintiff believes were unfairly promoted over her, Garcia and Santiago, are also Latino-American women and thus belong to the same protected group as Plaintiff. (*Id.*) Plaintiff admits that she has no knowledge of the hire dates, prior work experience within the Clerk's Office, disciplinary history, or individual evaluations of the individuals who were promoted instead of her. (Pl.'s Rule. 56.1 Resp. ¶ 27.) Plaintiff's only response to Defendants' argument that she has failed to identify any similarly situated individuals outside the protected group who were treated more favorably is her contention that Defendants have failed to detail superior qualifications of the clerks who received promotions over Plaintiff. (R. 84, Pl.'s Mem. at 6.) Plaintiff's argument is misguided because she carries the burden to present evidence that a "similarly situated" individual outside the protected group was treated more favorably. *Ballance*

*v. City of Springfield*, 424 F.3d 614, 617 (7th Cir. 2005). Plaintiff has not provided any evidence to show that any of the employees who were promoted to courtroom clerk positions were similarly situated, nor has she provided any evidence that proves that they were not as qualified for the promotion as she was. Because Plaintiff has failed to prove the second and fourth prongs of the *McDonnell Douglas* framework, she has not established a *prima facie* case of national origin discrimination. The Court therefore does not need to address whether or not Defendants' articulated reasons for its actions were pretextual. Accordingly, Plaintiff's national origin discrimination claim fails as a matter of law.

## II.     Plaintiff's Retaliation Claim (Count II)

In Count II, Plaintiff alleges that Defendants denied Plaintiff's bids for cross-training and promotion opportunities and verbally abused and harassed her wholly or partially in retaliation for her filing grievances and charges with the IDHR and the EEOC. (R. 19, Am. Compl. ¶ 54.) Title VII forbids an employer from discriminating against an employee who has "opposed any practice" made unlawful by Title VII or who "has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding or hearing under [Title VII]." 42 U.S.C. § 2000e-3(a). The purpose of this anti-retaliation provision is to "prevent employer interference with 'unfettered access' to Title VII's remedial mechanisms . . . by prohibiting employer actions that are likely 'to deter victims of discrimination from complaining to the EEOC,' the courts, and their employers." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) (quoting *Robinson v. Shell Oil Co.*, 519 U.S. 337, 346 (1997)). As with discrimination claims, a plaintiff may establish a retaliation claim by way of either the direct or indirect method. *Roney v. Ill. Dep't of Transp.*, 474 F.3d 455, 459 (7th Cir. 2007). Here, it is unclear which method Plaintiff seeks to proceed under. Defendants analyze Plaintiff's retaliation

claim under the direct method of proof, (R. 71, Defs.' Mem. at 9), and Plaintiff, in turn, responds to Defendants' arguments without correcting that assumption. (R. 84, Pl.'s Mem. at 7-8.) Accordingly, the Court assumes that Plaintiff intends to prove her retaliation claim by way of the direct method.

To prevail using the direct method of proof, Plaintiff must show: (1) that she engaged in an activity protected by Title VII; (2) that she suffered a materially adverse action by her employer; and (3) a causal connection between the two. *Silverman v. Bd. of Educ. of Chi.*, 637 F.3d 729, 740 (7th Cir. 2011). Defendants argue that Plaintiff's retaliation claim fails as a matter of law because she has failed to prove that she suffered a materially adverse action. (R. 72, Defs.' Mem. at 9.) Additionally, Defendants assert that even if the allegedly retaliatory acts were materially adverse, Plaintiff has not demonstrated a causal link between those actions and the alleged discrimination. (R. 89, Defs.' Reply at 11-12.)

## A. Whether Plaintiff has suffered a materially adverse employment action

"Materially adverse actions" are those that might dissuade a reasonable employee from making a charge of discrimination. *Burlington*, 548 U.S. at 68 (quoting *Rochon v. Gonzales*, 438 F.3d 1211, 1219 (D.C. Cir. 2006)). The adverse action must be "material" because "it is important to separate significant from trivial harms." *Id.* Whether an act is material will "often depend upon the particular circumstances. Context matters." *Id.* at 69. Accordingly, in assessing the materiality of any given act of alleged retaliation, the Court examines "the 'constellation of surrounding circumstances, expectations, and relationships.'" *Chapin v. Fort-Rohr Motors, Inc.*, 621 F.3d 673, 678 (7th Cir. 2010) (quoting *Burlington*, 548 U.S. at 69).

Plaintiff alleges that she was subjected to three materially adverse actions by Defendants: (1) her denied requests for cross-training; (2) her denied bids for promotion opportunities; and

(3) verbal abuse and harassment.  (R. 19, Pl.'s Am. Compl. ¶ 54.)  Plaintiff first contends that her denied requests for cross-training constitute a materially adverse action; however, Plaintiff has failed to provide any evidence other than her EEOC charge to support the allegation that her requests for cross-training were denied.  (*See* R. 19-2, Ex. 2, IDHR & EEOC Charge at 4.)  The evidence of record demonstrates that Plaintiff was in fact cross-trained on two occasions, one in 2009 and one in 2011.  (R. 85, Pl.'s Rule 56.1 Resp. ¶ 35.)  Plaintiff does not provide evidence demonstrating that she requested any cross-training in addition to the training she received. Therefore, there is no evidence that allows the Court to conclude that any requests Plaintiff made for cross-training were denied or that any such denials constituted materially adverse employment actions.

Plaintiff next contends that she suffered a materially adverse action when her bids for promotion opportunities were denied.  (R. 19, Am. Compl. ¶ 54.)  Denial of a promotion is a materially adverse action.  *Stephens v. Erickson*, 569 F.3d 779, 787 (7th Cir. 2009). Nevertheless, as discussed in detail above, Plaintiff has failed to prove that she was qualified for the promotion she sought.  Thus, Defendants' denials of her bids for promotions cannot constitute an adverse employment action.  *See Dandy v. United Parcel Serv., Inc.*, 388 F. 3d 263, 275 (7th Cir. 2004) (holding that the plaintiff had "not proven that she was qualified for a promotion; therefore, her promotion denial [did] not constitute an adverse employment action").

Finally, although Plaintiff alleged in her complaint that she was subjected to verbal abuse and harassment, she failed to provide any evidence of such actions.  Thus, the Court cannot conclude that Plaintiff suffered materially adverse actions in the form of verbal abuse and harassment.

Even under the indirect method of proof, Plaintiff must still prove that she suffered an adverse employment action. *Silverman*, 637 F.3d at 742 ("To establish a *prima facie* case of retaliation under the indirect method, [plaintiff] must demonstrate two of the same elements required by the direct method: first, that she engaged in a statutorily protected activity, and, second, that she suffered an adverse employment action.") Plaintiff has failed to prove that she suffered any materially adverse employment actions, as she must to establish her retaliation claim under Title VII. *Id.* at 740-42. Accordingly, Plaintiff's retaliation claim fails as a matter of law.

### III.    Plaintiff's Age Discrimination Claim (Count III)

In Count III, Plaintiff alleges that she was discriminated against on the basis of her age in violation of the ADEA when she was denied training and promotion opportunities and subjected to verbal abuse and harassment. (R. 19, Am. Compl. ¶¶ 83-84.) The ADEA makes it illegal for an employer to "discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1) (2008). Defendants argue that Plaintiff's age discrimination claim is time-barred under the ADEA and that Plaintiff has failed to establish a *prima facie* case of age discrimination. (R. 72, Defs.' Mem. at 10-14.)

#### A.    Whether Plaintiff's ADEA claim is time-barred

A plaintiff seeking relief under the ADEA may sue only if she files a charge of discrimination with the EEOC within 300 days of the alleged discriminatory act. *Flannery v. Recording Indus. Ass'n of Am.*, 354 F.3d 632, 637 (7th Cir. 2004). Defendants argue that Plaintiff's ADEA claim is time-barred because Plaintiff did not file a complaint with the EEOC until almost three years after the alleged discrimination occurred. (R. 72, Defs.' Mem. at 13.)

Plaintiff filed her EEOC charge on July 24, 2009.  (R. 19-2, Ex. 2, IDHR & EEOC Charge at 1.)

In it, Plaintiff alleged that she had been regularly harassed and denied cross-training and

promotion opportunities because of her age.  (*Id.* at 5-6.)  Plaintiff failed to provide any dates of

these alleged discriminatory acts and instead simply indicated that they occurred regularly and

consistently.  (*Id.*)  Any alleged discriminatory acts that occurred more than 300 days before her

EEOC filing are time-barred.  *See Filipovic v. K & R Exp. Systems, Inc.*, 176 F.3d 390, 396 (7th

Cir. 1999) (declining to consider any discriminatory acts that occurred prior to the 300-day

period unless plaintiff could show that those acts "were 'related closely enough' to the acts

occurring within the established time frame 'to be considered one ongoing violation'") (quoting

*Koelsch v. Beltone Elecs. Corp.*, 46 F.3d 705, 707 (7th Cir. 1992)).  Thus, the Court will not

consider any alleged discriminatory acts that occurred before September 27, 2008, i.e. 300 days

prior to the date of her EEOC filing.

> **B.      Whether Plaintiff has proved age discrimination through the direct method**

To prevail on her claim under the ADEA, a plaintiff "must prove, by a preponderance of

the evidence, that age was the 'but-for' cause of the challenged adverse employment action."

*Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 180 (2009).  A plaintiff may prove age

discrimination under the ADEA using the same direct or indirect methods of proof that are used

to prove discrimination under Title VII.  *Atanus v. Perry*, 520 F.3d 662, 671 (7th Cir. 2008).

Under the direct method, a plaintiff must introduce direct or circumstantial evidence that raises a

genuine issue as to whether there was a discriminatory reason for the adverse employment

action.  *Id.* at 671-72 (quoting *Burks v. Wisc. Dep't of Transp.*, 464 F.3d 744, 751 n.3 (7th Cir.

2006)).  The only piece of evidence Plaintiff provides that directly supports her age

discrimination claim is her testimony that Vasquez told her during one of their conversations,

"why should I respect you when you are older than me, when you are old."  (R. 85, Pl.'s Rule 56.1 Resp. ¶ 13.)  This appears to be the comment Defendants rely on for their time-barred argument, however, it is unclear from the record when Vasquez made this statement, so the Court cannot determine that this piece of evidence is barred by the 300-day ADEA time limit. Nevertheless, this statement, standing alone, is not enough to create a triable issue of fact.  *See Merillat v. Metal Spinners, Inc.*, 470 F.3d 685, 694 (7th Cir. 2006) (Unless the timing or circumstances of remarks support a discriminatory inference, "isolated comments that are no more than 'stray remarks' in the workplace are insufficient to establish that a particular decision was motivated by discriminatory animus.")  The Court therefore must determine whether Plaintiff has established her age discrimination claim through the indirect method of proof.

**C.     Whether Plaintiff has proved age discrimination through the indirect method**

The *McDonnell Douglas* burden-shifting framework applies to ADEA claims as it does to Title VII claims.  *Raymond v. Ameritech Corp.*, 442 F.3d 600, 610 (7th Cir. 2006).  Plaintiff must first establish a *prima facie* case of discrimination by demonstrating that: (1) she is a member of a protected group; (2) she applied for and was qualified for the position sought; (3) she was rejected for that position; and (4) Defendants instead promoted someone younger who was similarly situated to Plaintiff.[6]  *Grayson v. City of Chi.*, 317 F.3d 745, 748 (7th Cir. 2003). As with Title VII claims, if Plaintiff successfully establishes a *prima facie* case of age discrimination, the burden shifts to Defendants to offer a permissible, nondiscriminatory reason

---

[6]  This test is specific to establishing a *prima facie* case in a failure to promote context.  In her complaint, Plaintiff also alleges that she was discriminated against on the basis of her age by being denied cross-training opportunities and being subjected to verbal abuse and harassment. (R. 19, Am. Compl. ¶ 83.)  In Plaintiff's response to Defendants' motion for summary judgment, however, she only argues that she suffered age discrimination when she was denied promotion opportunities.  (R. 84, Pl.'s Mem. at 6-7.)  The Court thus considers only the alleged denials of Plaintiff's bids for promotions in analyzing her ADEA claim.  *See Palmer*, 327 F.3d at 597-98; *Laborers' Int'l Union*, 197 F.3d at 1197; *Oak Brook Hotel*, 846 F. Supp. at 641.

for the adverse employment action.  *Id.*  If Defendants meet this burden, the burden again shifts

back to Plaintiff to show that Defendants' purported reasons for the adverse action are pretextual.

*Id.*

Defendants argue that Plaintiff cannot make out a *prima facie* case of age discrimination

because she does not satisfy the fourth prong—she fails to establish that the younger employees

who were promoted were similarly situated to her.  (R. 72, Defs.' Mem. at 11.)  To determine

whether two employees are similarly situated, the Court examines all the relevant factors,

including their job descriptions, experience, education and other qualifications, whether they

were subject to the same standards or subordinate to the same supervisor, and any other factors

the employer considered in making the personnel decision.  *Ajayi v. Aramark Bus. Servs., Inc.*,

336 F.3d 520, 531-32 (7th Cir. 2003).

Plaintiff has identified two younger employees who were promoted to the courtroom

clerk position she sought: Garcia is forty-two years old and was promoted on December 1, 2008,

and Santiago is forty-eight years old and was promoted on May 4, 2009.  (R. 84, Pl.'s Mem. at 6;

Pl.'s Rule 56.1 Resp. ¶¶ 29-30.)  But Plaintiff has failed to provide any evidence to prove that

Garcia and Santiago were similarly situated to her.  Plaintiff does not introduce any evidence

regarding Garcia's and Santiago's performance, qualifications, or conduct.  In fact, Garcia and

Santiago both held different positions than Plaintiff when they were promoted: Garcia was a

Criminal Department Clerk and Santiago was a General Officer Employee assigned to the

Traffic Department.  (Pl.'s Rule 56.1 Resp. ¶¶ 29-30.)  Plaintiff attempts to save her claim by

arguing that Defendants do not identify any ways in which Garcia and Santiago are not similarly

situated to Plaintiff.  (R. 84, Pl.'s Mem. at 7.)  It is Plaintiff's burden, however, to demonstrate

that Garcia and Santiago are similarly situated, not Defendants' to prove that they are not.

*Durkin v. City of Chi.*, 341 F.3d 606, 614 (7th Cir. 2003). Plaintiff has not met this burden.

Accordingly, Plaintiff is unable to establish a *prima facie* case of discrimination, and her ADEA

claim fails as a matter of law.

Plaintiff has failed to provide evidence that demonstrates that there is a genuine issue for

trial. *See Wheeler*, 439 F.3d at 634. She has failed to provide the evidence necessary to support

her race discrimination, age discrimination, and retaliation claims. Accordingly, Defendants are

entitled to summary judgment on all three counts of the complaint.

## CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment (R. 70) is

GRANTED. The Clerk of the Court is directed to enter a final judgment in favor of Defendants

Cook County and the Clerk of the Circuit Court of Cook County, Illinois.

**ENTERED:** _____
**Chief Judge Ruben Castillo**
**United States District Court**

**Dated: November 1, 2013**